## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**MICHAEL CHO and JENNIFER WALDER on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**-against-**

**FOUR M FRANCHISING, LLC, FOUR M CAPITAL LLC, FOUR M FOOD SERVICE OF ATLANTIC TERMINAL LLC, FMFS OF FOREST HILLS LLC, FMFS OF 125, LLC, FMFS OF CP, LLC, FMFS OF RIVERDALE, LLC, FMFS OF TIMES SQUARE, LLC, FOUR M FOOD SERVICE OF GATEWAY, LLC, FOUR M FOOD SERVICE OF HICKSVILLE, LLC, FOUR M FOOD SERVICE OF NEW ROC, LLC, FOUR M FOOD SERVICE OF PORT CHESTER, LLC, FOUR M FOOD SERVICE OF WEST NYACK, LLC, FOUR M FOOD SERVICE OF WESTBURY, LLC, FOUR M FOOD SERVICE OF WHITE PLAINS, LLC,**

**Defendants.**

**CLASS ACTION COMPLAINT**

Plaintiffs Michael Cho and Jennifer Walder, individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, overtime pay and other wages for Plaintiffs and their similarly situated co-workers – servers, bussers, bartenders, and other "tipped workers" – who work or have worked at  Buffalo Wild Wings restaurants owned and/or operated by Four M Franchising, LLC, Four M Capital LLC, Four M Food Service Of Atlantic Terminal LLC, FMFS Of Forest Hills LLC, FMFS Of 125, LLC, FMFS Of CP, LLC, FMFS Of Riverdale, LLC, FMFS Of Times Square, LLC, Four M Food Service Of Gateway, LLC, Four M Food

Service Of Hicksville, LLC, Four M Food Service Of New Roc, LLC, Four M Food Service Of Port Chester, LLC, Four M Food Service Of West Nyack, LLC, Four M Food Service Of Westbury, LLC, Four M Food Service Of White Plains, LLC, (collectively "Buffalo Wild Wings" or "Defendants").

2.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former tipped workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

3.      Plaintiffs also bring this action on behalf of themselves and similarly situated current and former tipped workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

4.      Buffalo Wild Wings is a casual dining restaurant and sports bar franchise in the United States, Canada, Mexico and the Philippines. Defendants own and operate 18 Buffalo Wild Wing restaurants located at: 139 Flatbush Avenue, Brooklyn, New York 11217; 10716 71st Ave, Forest Hills, New York 11375; 2319 Frederick Douglass Blvd., New York, New York 10027; 134-15 20th Ave., College Point, New York 11356; 193 West 237th Street, Bronx, New York 10463; 253 West 47th Street, New York, New York 10036; 632 Gateway Dr., Brooklyn, New York 11239; 358B Broadway Mall, Hicksville, New York 11801; 33 LeCount Place, New Rochelle, New York 10801; 44 Westchester Ave., Port Chester, New York 10573; 4640

Palisades Center Dr., West Nyack, New York 10994; 737 Merrick Ave., Westbury, New York 11590; 1 Mamaroneck Ave., White Plains, New York 10601; 208 Summer St., Stamford, Connecticut 06901; 1201 Boston Post Rd., STE R3, Milford, CT 06460; 74-76 Church Street, New Haven, Connecticut 06510; 350 Universal Dr., North Haven, Connecticut 06473; and 20 Backus Ave., Danbury, Connecticut 06810.

5.      At all times relevant, Defendants have maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including the ability to hire, fire, and discipline them.

6.      At all times relevant, Defendants paid Plaintiffs and others similarly situated tipped workers at the "tipped" minimum wage rate, however, Defendants failed to meet the strict statutory requirements that would permit Buffalo Wild Wings to apply the reduced minimum wage to tipped workers.

7.      Specifically, Defendants maintained a policy and practice whereby they failed to satisfy the strict statutory requirements under the FLSA, and NYLL that would allow them to pay this reduced minimum wage (take a "tip credit").

8.      Additionally, Defendants maintained a policy and practice whereby tipped workers were required to spend a substantial amount of time, 2 hours or more than 20%, performing non-tip producing side work *related* to the employee's tipped occupation.

9.      Defendants also maintained a policy and practice whereby tipped workers were required to perform non-tip producing side work *unrelated* to the employee's tipped occupation. As these duties were unrelated to the tipped profession, tipped workers are engaged in a dual occupation while being compensated at the tip credit rate rather than the full minimum wage.

10.      At Buffalo Wild Wings, tipped workers were required to perform side work duties

that included but were not limited to: (1) filling and cleaning ice bins; (2) setting up and stocking the to-go station; (3) rolling silverware; (4) running silverware through the dish machine; (5) sweeping; (6) wiping down tables; (7) washing ketchup bottles; (8) restocking cups and napkins; (9) dusting; (10) stocking and/or filling condiments; (11) setting up and breaking down the beverage station; (12) attending pre-shift meetings; (13) running dirty dishes through the dish machine; (14)  wiping down server trays; (15) wiping down windows; (16) cleaning the bathroom; (17) removing and cleaning bar floor mats; (18) cutting lemons, limes and oranges; (19) wiping down the bar; (20) de-gumming tables; (21) filing sanitizer buckets; (22) rotating sauces and other perishable items in the cooler/refrigerator; and (23) cleaning out salt and pepper shakers.

11.     Tipped workers were required by Defendants to perform side work at the beginning, during, and at the end of their shifts.

12.     Defendants required tipped workers to perform most side work before the restaurant opened or after the restaurant closed and customers had left.

13.     During these periods of time,  tipped workers were compensated at the tipped minimum wage rate rather than the full minimum wage rate.

14.     The duties that Defendants required tipped workers to perform are duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

15.     The side work described above is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.

16.     Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments.

17.     Defendants maintained a policy and practice whereby tipped workers were required to wear uniforms resembling a sports jersey and featured the Buffalo Wild Wings logo.

18.     Defendants only supplied tipped workers with one to two uniforms.

19.     Defendants did not supply tipped workers with a sufficient number of uniforms.

20.     Defendants did not launder tipped workers' uniforms despite requiring that tipped workers have a clean uniform when working.

21.     Defendants required Plaintiffs and other tipped workers to pay for the cleaning and maintenance of their uniforms.

## THE PARTIES

### Plaintiffs

**Michael Cho**

22.     Michael Cho ("Cho") is an adult individual who is a resident of Forest Hills, New York.

23.     Cho was employed by Defendants as a server at the Buffalo Wild Wings located at 10716 71st Ave, Forest Hills, New York 11375 from in or around October 2015 through December 15, 2015.

24.     Defendants owned and operated the Buffalo Wild Wings restaurant at which Cho worked.

25.     Cho is a covered employee within the meaning of the FLSA and the NYLL.

26.     A written consent form for Cho is being filed with this Class Action Complaint.

**Jennifer Walder**

27.     Jennifer Walder ("Walder") is an adult individual who is a resident of Brooklyn, New York.

28.     Walder was employed by Defendants as a server and bartender at the Buffalo Wild Wings located at 139 Flatbush Avenue, Brooklyn, New York 11217 from in or around November 2012 through April 2014.

29.     Defendants owned and operated the Buffalo Wild Wings restaurant at which Walder worked.

30.     Walder is a covered employee within the meaning of the FLSA and the NYLL.

31.     A written consent form for Walder is being filed with this Class Action Complaint.

**Defendants**

32.     Defendants Four M Franchising, LLC, Four M Capital LLC, Four M Food Service Of Atlantic Terminal LLC, FMFS Of Forest Hills LLC, FMFS Of 125, LLC, FMFS Of CP, LLC, FMFS Of Riverdale, LLC, FMFS Of Times Square, LLC, Four M Food Service Of Gateway, LLC, Four M Food Service Of Hicksville, LLC, Four M Food Service Of New Roc, LLC, Four M Food Service Of Port Chester, LLC, Four M Food Service Of West Nyack, LLC, Four M Food Service Of Westbury, LLC, Four M Food Service Of White Plains, LLC, jointly employed Plaintiffs and similarly situated employees at all times relevant.

33.     Each Defendant had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

34.     Defendants were part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

35.     Defendants' operations were interrelated and unified.

36.     During all relevant times, Buffalo Wild Wings shared a common management and was centrally controlled and/or owned by Defendants.

37.     During all relevant times, Defendants have been Plaintiffs' and similarly situated tipped workers' employers within the meaning of the FLSA, and NYLL.

**Four M Franchising, LLC**

38.     Together with the other Defendants, Four M Franchising, LLC ("Four M Franchising") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

39.     Four M Franchising's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

40.     Four M Franchising is a wholly owned subsidiary of Four M.

41.     Four M Franchising is a domestic corporation doing business in New York State.

42.     At all relevant times, Four M Franchising maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

43.     Four M Franchising allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

44.     Four M Franchising applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

45.     Upon information and belief, at all relevant times Four M Franchising had an annual gross volume of sales in excess of $500,000

**Four M Capital LLC**

46.     Together with the other Defendants, Four M Capital LLC ("Four M") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

47.     Four M's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601.

48.     Four M is a wholly owned subsidiary of Four M Franchising.

49.     Four M is a domestic corporation doing business in New York State.

50.     At all relevant times, Four M maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

51.     Four M allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

52.     Four M applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

53.     Upon information and belief, at all relevant times Four M had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of Atlantic Terminal LLC**

54.     Together with the other Defendants, Four M Food Service of Atlantic Terminal LLC ("Four M Atlantic Terminal") owned and/or operated the Buffalo Wild Wings restaurants during the relevant period.

55.     Together with the other Defendants, Four M Atlantic Terminal operates the Buffalo Wild Wings restaurant located at 139 Flatbush Avenue, Brooklyn, New York 11217.

56.     Four M Atlantic Terminal's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

57.     Four M Atlantic Terminal is a wholly owned subsidiary of Four M.

58.     Four M Atlantic Terminal is a domestic corporation doing business in New York State.

59.     The Liquor License for Four M Atlantic Terminal identifies Four M as one of its principals.

60.     Four M Atlantic Terminal is the entity that appeared on Plaintiff Walder's paystubs.

61.     At all relevant times, Four M Atlantic Terminal maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

62.     Four M Atlantic Terminal allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

63.     Four M Atlantic Terminal applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

64.     Upon information and belief, at all relevant times Four M Atlantic Terminal had an annual gross volume of sales in excess of $500,000.

**FMFS of Forest Hills LLC**

65.     Together with the other Defendants, FMFS of Forest Hills LLC ("FMFS Forest Hills") has owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

66.     Together with the other Defendants, FMFS Forest Hills operates the Buffalo Wild Wings restaurant located at 10716 71st Ave, Forest Hills, New York 11375.

67.     FMFS Forest Hills is a domestic corporation doing business in New York State.

68.     FMFS Forest Hills' principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

69.     FMFS Forest Hills is a wholly owned subsidiary of Four M.

70.     The Liquor License for FMFS Forest Hills identifies Four M as one of its principals.

71.     FMFS Forest Hills is the entity that appears on Plaintiff Cho's paystubs.

72.     At all relevant times, FMFS Forest Hills has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices.

73.     FMFS Forest Hills applies the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

74.     Upon information and belief, at all relevant times, FMFS Forest Hills has an annual gross volume of sales in excess of $500,000.

**FMFS of 125, LLC**

75.     Together with the other Defendants, FMFS of 125, LLC ("FMFS of 125") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

76.     Together with the other Defendants, FMFS of 125 operates the Buffalo Wild Wings restaurant located at 2319 Frederick Douglass Blvd., New York, NY .

77.     FMFS of 125's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

78.     FMFS of 125 is a wholly owned subsidiary of Four M.

79.     FMFS of 125 Terminal is a domestic corporation doing business in New York

State.

80.     At all relevant times, FMFS of 125 maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

81.     FMFS of 125 allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

82.     FMFS of 125 applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

83.     Upon information and belief, at all relevant times FMFS of 125 had an annual gross volume of sales in excess of $500,000.

**FMFS of CP, LLC**

84.     Together with the other Defendants, FMFS of CP, LLC ("FMFS of CP") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

85.     Together with the other Defendants, FMFS of CP operates the Buffalo Wild Wings restaurant located at 134-15 20th Ave., College Point, New York 11356.

86.     FMFS of CP's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

87.     FMFS of CP is a wholly owned subsidiary of Four M.

88.     FMFS of CP is a domestic corporation doing business in New York State.

89.     At all relevant times, FMFS of CP maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

90.     FMFS of CP allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

91.     FMFS of CP applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

92.     Upon information and belief, at all relevant times FMFS of CP had an annual gross volume of sales in excess of $500,000.

**FMFS of Riverdale, LLC**

93.     Together with the other Defendants, FMFS of Riverdale, LLC ("FMFS of Riverdale") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

94.     Together with the other Defendants, FMFS of Riverdale operates the Buffalo Wild Wings restaurant located at 193 West 237th Street, Bronx, New York 10463.

95.     FMFS of Riverdale's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

96.     FMFS of Riverdale is a wholly owned subsidiary of Four M.

97.     FMFS of Riverdale is a domestic corporation doing business in New York State.

98.     At all relevant times, FMFS of Riverdale maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

99.     FMFS of Riverdale allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

100.    FMFS of Riverdale applied the same employment policies, practices, and

procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

101.    Upon information and belief, at all relevant times FMFS of Riverdale had an annual gross volume of sales in excess of $500,000.

**FMFS of Times Square, LLC**

102.    Together with the other Defendants, FMFS of Times Square, LLC ("FMFS of Times Square") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

103.    Together with the other Defendants, FMFS of Times Square operates the Buffalo Wild Wings restaurant located at 253 West 47th Street, New York, NY 10036.

104.    FMFS of Times Square's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

105.    FMFS of Times Square is a wholly owned subsidiary of Four M.

106.    FMFS of Times Square is a domestic corporation doing business in New York State.

107.    At all relevant times, FMFS of Times Square maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

108.    FMFS of Times Square allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

109.   FMFS of Times Square applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

110.   Upon information and belief, at all relevant times FMFS of Times Square had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of Gateway, LLC**

111.   Together with the other Defendants, Four M Food Service of Gateway, LLC ("Four M Gateway") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

112.   Together with the other Defendants, Four M Gateway operates the Buffalo Wild Wings restaurant located at 632 Gateway Dr., Brooklyn, New York 11239.

113.   Four M Gateway's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

114.   Four M Gateway is a wholly owned subsidiary of Four M.

115.   Four M Gateway is a domestic corporation doing business in New York State.

116.   At all relevant times, Four M Gateway maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

117.   Four M Gateway allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

118.   Four M Gateway applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies,

practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

119.    Upon information and belief, at all relevant times Four M Gateway had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of Hicksville, LLC**

120.    Together with the other Defendants, Four M Food Service of Hicksville, LLC ("Four M Hicksville") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

121.    Together with the other Defendants, Four M Hicksville operates the Buffalo Wild Wings restaurant located at 358B Broadway Mall, Hicksville, New York 11801.

122.    Four M Hicksville's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

123.    Four M Hicksville is a wholly owned subsidiary of Four M.

124.    Four M Hicksville is a domestic corporation doing business in New York State.

125.    At all relevant times, Four M Hicksville maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

126.    Four M Hicksville allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

127.    Four M Hicksville applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

128.    Upon information and belief, at all relevant times Four M Hicksville had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of New Roc, LLC**

129.    Together with the other Defendants, Four M Food Service of New Roc, LLC ("Four M New Roc") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

130.    Together with the other Defendants, Four M New Roc operates the Buffalo Wild Wings restaurant located at 33 LeCount Place, New Rochelle, New York 10801.

131.    Four M New Roc's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

132.    Four M New Roc is a wholly owned subsidiary of Four M.

133.    Four M New Roc is a domestic corporation doing business in New York State.

134.    The Liquor License for Four M New Roc identifies Four M as one of its principals.

135.    At all relevant times, Four M New Roc maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

136.    Four M New Roc allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

137.    Four M New Roc applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

138.    Upon information and belief, at all relevant times Four M New Roc had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of Port Chester, LLC**

139.    Together with the other Defendants, Four M Food Service of Port Chester, LLC ("Four M Port Chester") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

140.    Together with the other Defendants, Four M Port Chester operates the Buffalo Wild Wings restaurant located at 44 Westchester Ave, Port Chester, New York 10573.

141.    Four M Port Chester's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

142.    Four M Port Chester is a wholly owned subsidiary of Four M.

143.    Four M Port Chester is a domestic corporation doing business in New York State.

144.    The Liquor License for Four M Port Chester identifies Four M as one of its principals.

145.    At all relevant times, Four M Port Chester maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

146.    Four M Port Chester allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

147.    Four M Port Chester applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other

wages.

148.     Upon information and belief, at all relevant times Four M Port Chester had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of Westbury, LLC**

149.     Together with the other Defendants, Four M Food Service of Westbury, LLC ("Four M Westbury") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

150.     Together with the other Defendants, Four M Westbury operates the Buffalo Wild Wings restaurant located at 737 Merrick Ave., Westbury, New York 11590.

151.     Four M Westbury's principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

152.     Four M Westbury is a wholly owned subsidiary of Four M.

153.     Four M Westbury is a domestic corporation doing business in New York State.

154.     The Liquor License for Four M Westbury identifies Four M as one of its principals.

155.     At all relevant times, Four M Westbury maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

156.     Four M Westbury allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

157.     Four M Westbury applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other

wages.

158.    Upon information and belief, at all relevant times Four M Westbury had an annual gross volume of sales in excess of $500,000.

**Four M Food Service of White Plains, LLC**

159.    Together with the other Defendants, Four M Food Service of White Plains, LLC ("Four M White Plains") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

160.    Together with the other Defendants, Four M White Plains operates the Buffalo Wild Wings restaurant located at 1 Mamaroneck Ave., White Plains, New York 10601.

161.    Four M White Plains' principal executive office is located at 7 Renaissance Square, 5th Floor, White Plains, New York 10601, the same principal executive office as Four M.

162.    Four M White Plains is a wholly owned subsidiary of Four M.

163.    Four M White Plains is a domestic corporation doing business in New York State.

164.    The Liquor License for Four M White Plains identifies Four M as one of its principals.

165.    At all relevant times, Four M White Plains maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

166.    Four M White Plains allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

167.    Four M White Plains applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies,

practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

168.    Upon information and belief, at all relevant times Four M White Plains had an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

169.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

170.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

171.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

172.    Venue is proper in the Southern District of New York White Plains pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in the district.

## COLLECTIVE ACTION ALLEGATIONS

173.    Plaintiffs  bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated current and former tipped workers employed at Buffalo Wild Wings restaurants owned, operated, and/or controlled by Defendants, for a period of three years prior to the filing of the original Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

174.    At all relevant times, Plaintiffs and the FLSA Collective Members have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiffs at the legally

required minimum wage and overtime pay for all hours worked. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

175.    Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to pay full minimum wages.

176.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they work.

177.    Defendants are aware or should have been aware that federal law required them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 hours per workweek.

178.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

179.    The First Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. 216(b).

180.    The FLSA Collective Members are readily ascertainable.

181.    For the purpose of notice and other purposes related to this action, the FLSA Collective Members' names and addresses are readily available from Defendants' records.

182.    Notice can be provided to the FLSA Collective Members via first class mail to the last address known to Defendants.

## NEW YORK CLASS ACTION ALLEGATIONS

183.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as tipped workers and similar employees at the Buffalo Wild Wings restaurants in New York between March 2, 2010 and the date of final judgment in this matter (the "Rule 23 Class").

- 21 -

184.    Excluded from the Rule 23 Class Members are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

185.    The members of the Rule 23 Class ("Class Members") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.   Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

186.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

187.    There are more than fifty Rule 23 Class Members.

188.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

189.    All the Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wages, overtime wages, uniform maintenance pay, failing to provide proper wage and hour notices, and failing to provide proper wage statements.

190.    Plaintiffs and the Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

191.    Plaintiffs and the Rule 23 Class Members have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

192.    Plaintiffs and other Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

193.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and has no interests antagonistic to the Rule 23 Class Members.

194.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

195.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual

Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.   In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

196.    Upon information and belief, Defendants and other employers throughout the state violate the NYLL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

197.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

198.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class Members individually and include, but are not limited to, the following:

(a)    whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

(b)     whether Defendants employed Plaintiffs and the Rule 23 Class Members within the meaning of the NYLL;

(c)     whether Defendants paid Plaintiffs and the Rule 23 Class Members at the proper minimum wage rate for all hours worked;

(d)     whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiffs and the Rule 23 Class Members;

(e)     whether Defendants have a policy of requiring tipped employees to engage in side work for two hours or more per day and/or for more than twenty percent of their time at work in violation of the NYLL;

(f)     whether Defendants properly compensated Plaintiffs and the Rule 23 Class Members for hours worked in excess of forty hours per workweek;

(g)     whether Defendants failed to pay Plaintiffs and Rule 23 Class Members for uniform-related expenses;

(h)     whether Defendants failed to furnish Plaintiffs and the Rule 23 Class Members with proper annual wage notices, as required by the NYLL;

(i)     whether Defendants failed to furnish Plaintiffs and the Rule 23 Class Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the NYLL;

(j)     whether Defendants' policy of failing to pay Tipped Employees was instituted willfully or with reckless disregard of the law; and

(k)     the nature and extent of class-wide injury and the measure of damages for those injuries.

## PLAINTIFFS' FACTUAL ALLEGATIONS

199.    Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiffs, individually, as follows:

**Michael Cho**

200.    Defendants did not pay Cho the proper wages for all of the time that he was

suffered or permitted to work each workweek.

201.    Throughout the duration of his employment at Buffalo Wild Wings, Cho received paychecks from Defendants that did not properly compensate him for all the hours that he worked.

202.    Defendants paid Cho at the New York tipped minimum wage rate when he should have been paid at the full minimum wage rate.

203.    Defendants did not provide Cho with proper written notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to his wages.

204.    Defendants required Cho to spend a substantial amount of time, 2 hours or more than 20% of his shift, engaged in non-tipped side work.

205.    Defendants required Cho to perform side work duties unrelated to the tipped profession and thus, engaged in a dual occupation.

206.    Side work duties Cho was required to perform included, but are not limited to: (1) filling and cleaning ice bins; (2) setting up and stocking the to-go station; (3) rolling silverware; (4) running silverware through the dish machine; (5) sweeping; (6) wiping down tables; (7) washing ketchup bottles; (8) restocking cups and napkins; (9) dusting; (10) stocking and/or filling condiments; (11) setting up and breaking down the beverage station; (12) attending pre-shift meetings; (13) running dirty dishes through the dish machine; (14)  wiping down server trays; (15) wiping down windows; (16) cleaning the bathroom; (17) de-gumming tables; (18) filing sanitizer buckets; (19) rotating sauces and other perishable items in the cooler/refrigerator; and (20) cleaning out salt and pepper shakers.

207.    During his employment, Cho generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- Approximately 5 shifts per week, lasting from approximately 4 p.m. until 11 p.m. or 12 a.m. and 6 p.m. until 2 a.m. Approximately 35 to 45 hours per week.

208.    When Cho worked over 40 hours in a workweek, Defendants failed to calculate his overtime rate at 1.5 times the full minimum wage rate.

209.    Defendants required Cho to wear a uniform resembling a sports jersey bearing the Buffalo Wild Wings logo.

210.    Defendants did not launder and/or maintain Cho's mandatory uniform, and failed to pay Cho the weekly uniform-maintenance amount in addition to the required minimum wage.

211.    Defendants failed to furnish Cho with a  sufficient number of uniforms.

212.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Cho.

213.    Defendants failed to furnish Cho with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, or an accurate annual notice.

**Jennifer Walder**

214.    Defendants did not pay Walder the proper wages for all of the time that she was suffered or permitted to work each workweek.

215.    Throughout the duration of her employment at Buffalo Wild Wings, Walder received paychecks from Defendants that did not properly compensate her for all the hours that she worked.

216.    Defendants paid Walder at the New York tipped minimum wage rate when she should have been paid at the full minimum wage rate.

217.    Defendants did not provide Walder with proper written notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

218.    Defendants required Walder to spend a substantial amount of time, 2 hours or more than 20% of her shift, engaged in non-tipped side work.

219.    Defendants required Walder to perform side work duties unrelated to the tipped profession and thus, engaged in a dual occupation.

220.    Side work duties Walder was required to perform included, but are not limited to: (1) filling and cleaning ice bins; (2) setting up and stocking the to-go station; (3) rolling silverware; (4) running silverware through the dish machine; (5) sweeping; (6) wiping down tables; (7) washing ketchup bottles; (8) restocking cups and napkins; (9) dusting; (10) stocking and/or filling condiments; (11) setting up and breaking down the beverage station; (12) attending pre-shift meetings; (13) running dirty dishes through the dish machine; (14)  wiping down server trays; (15) wiping down windows; (16) cleaning the bathroom; (17) removing and cleaning bar floor mats; (18) cutting lemons, limes and oranges; (19) wiping down the bar; (20) de-gumming tables; (21) filing sanitizer buckets; (22) rotating sauces and other perishable items in the cooler/refrigerator; and (23) cleaning out salt and pepper shakers.

221.    During her employment, Walder generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays:

- Approximately 5 shifts per week, from in or around November 2012 through the end of December 2012; 4 shifts per week from in or around January 2013 through April 2014. Shifts lasted from approximately 10 a.m. until 4:45 p.m., 11 a.m. until 5:45 p.m., and 5:45 p.m. until 2 a.m.

222.    Defendants required Walder to wear a uniform resembling a sports jersey bearing the Buffalo Wild Wings logo.

223.    Defendants did not launder and/or maintain Walder's mandatory uniform, and failed to pay Walder the weekly uniform-maintenance amount in addition to the required minimum wage.

224.    Defendants failed to furnish Walder with a  sufficient number of uniforms.

225.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Walder.

226.    Defendants failed to furnish Walder with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, or an accurate annual notice.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

227.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

228.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

229.    At all relevant times, each of the Defendants has been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, each Defendant has employed "employee[s]," including Plaintiffs and the FLSA Collective Members.

230.    Defendants were required to pay directly to Plaintiffs and the FLSA Collective Members the applicable minimum wage rates for all hours worked.

231.    Defendants failed to pay Plaintiffs and the FLSA Collective Members the minimum wages to which they are entitled under the FLSA.

232.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiffs and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

233.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiffs and the FLSA Collective Members to perform side work *related* to the tipped profession in excess of twenty percent of their work time. During these periods, Defendants compensated Plaintiffs and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq*.

234.    Defendants also regularly required Plaintiffs and the FLSA Collective Members to perform non-tipped side work *unrelated* to their tipped occupation.  During these periods, Plaintiffs and the FLSA Collective Members were engaged in a dual occupation and compensated at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq*.

235.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.   Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

236.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

237.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

238.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

239.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff Cho and the FLSA Collective Members.

240.    Plaintiffs and the FLSA Collective Members worked in excess of 40 hours during some workweeks in the relevant period.

241.    Defendants willfully failed to pay Plaintiffs and FLSA Collective Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek. Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

242.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

243.    As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**THIRD CAUSE OF ACTION**
**New York Labor Law – Minimum Wage**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

244.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

245.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

246.    At all times relevant, Plaintiffs and the Rule 23 Class Members have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class Members within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

247.    At all times relevant, Plaintiffs and the Rule 23 Class Members have been covered by the NYLL.

248.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

249.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs and the members of the Rule 23 Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from July 24, 2009 through the December 30, 2013; and (b) $8.00 per hour for all hours worked from December 31, 2013  to December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 to December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31, 2015 to the present  under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

250.   Prior to January 1, 2011, Defendants failed to furnish with every payment of wages to Plaintiffs and the members of the Rule 23 Class a statement listing hours worked, rates paid, gross wages, and tip allowance claimed as part of their minimum hourly wage rate, as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiffs and the members of the Rule 23 Class were entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

251.   Prior to January 1, 2011, Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and the members of the Rule 23 Class, as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiffs and the members of the Rule 23 Class were entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

252.   Since January 1, 2011, Defendants have failed to notify Plaintiffs and the members of the Rule 23 Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiffs and the members of the Rule 23 Class have been entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

253.   Defendants required Plaintiffs and the Rule 23 Class Members to perform a substantial amount of non-tipped side work in excess of 2 hours or more, or than 20% of their work time.  During these periods, Plaintiffs and the Rule 23 Class Members were engaged in a non-tipped occupation, yet they were compensated by Defendants at the tipped minimum wage or lower rate, rather than the full hourly minimum wage rate as required by the NYLL and the supporting New York State Department of Labor Regulations.

254.   Through their knowing or intentional failure to pay minimum hourly wages to

Plaintiffs and the NY Class Members, Defendants willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

255.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

256.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

257.    Defendants failed to pay Plaintiffs and the Rule 23 Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

258.    Defendants failed to pay Plaintiffs and the Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek.

259.    Through their knowing or intentional failure to pay Plaintiffs and the Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

260.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Uniform Violations**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

261.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

262.    Defendants required Plaintiffs and the Rule 23 Class Members to wear a uniform resembling a sports jerseys and featured the Buffalo Wild Wings logo.

263.    Defendants failed to launder and/or maintain the required uniforms for Plaintiffs and the Rule 23 Class Members, and failed to pay them the required weekly amount in addition to the required minimum wage.

264.    By failing to pay Plaintiffs and the Rule 23 Class Members for the maintenance of required uniforms, Defendants have willfully violated the NYLL, and the supporting New York State Department of Labor Regulations.

265.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants the costs of maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

266.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

267.    Defendants have willfully failed to supply Plaintiffs and the Rule 23 Class Members with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing Plaintiffs' and the Rule 23 Class

Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage,

including tip, meal, or lodging allowances; the regular pay day designated by the employer in

accordance with section one hundred ninety-one of this article; the name of the employer; any

"doing business as" names used by the employer; the physical address of the employer's main

office or principal place of business, and a mailing address if different; the telephone number of

the employer; plus such other information as the commissioner deems material and necessary.

268.    Through their failure to provide Plaintiffs and the Rule 23 Class Members with

the wage notices required by the NYLL, Defendants s willfully violated NYLL, Article 6, §§ 190

*et seq.*, and the supporting New York State Department of Labor Regulations.

269.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiffs and the

Rule 23 Class Members are entitled to statutory penalties of fifty dollars for each workday that

Defendants failed to provide them with wage notices, or a total of five thousand dollars,

reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL,

Article 6, § 198(1-b).

## SEVENTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

270.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and

incorporate by reference all allegations in all preceding paragraphs.

271.    Defendants willfully failed to supply Plaintiffs and the Rule 23 Class Members

with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates

of work covered by that payment of wages; name of employee; name of employer; address and

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift,

day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

272.    Through their failure to provide Plaintiffs and the Rule 23 Class Members with the accurate wage statements required by the NYLL, Defendants have violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

273.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiffs and the NY Class Members are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Unpaid minimum wages, overtime pay, and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representative of the Rule 23 Classes and counsel of record as Class Counsel;

E.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

F.      Unpaid minimum wages, overtime pay, uniform maintenance pay, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

G.      Statutory penalties of fifty dollars for each day that Defendants failed to provide Plaintiffs and the Rule 23 Class Members with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

H.      Statutory penalties of two hundred fifty dollars for each day that Defendants failed to provide Plaintiffs and the Rule 23 Class Members with accurate wage statements, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

I.      Prejudgment and post-judgment interest;

J.      An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

K.      Reasonable attorneys' fees and costs of the action; and

Such other relief as this Court shall deem just and proper.

Dated:      New York, New York
            March 2, 2016

                              Respectfully submitted,


                              ___/s/ Brian S. Schaffer_____
                                  Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
Nicholas P. Melito
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and*
*the Putative Classes*

## FAIR LABOR STANDARDS ACT CONSENT

1.     I consent to be a party plaintiff in a lawsuit against Buffalo Wild Wings and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.     By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_M. y. Cho_
Signature

_MICHAEL YOUNG KY CHO_
Full Legal Name (Print)

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against Buffalo Wild Wings and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.



_____
Signature

_____
Full Legal Name (Print)